## No. C-1321

**Hugh H. C. Weed, Executive Director of Revenue, State of Colorado v. City of Pueblo, Colorado**

(591 P.2d 80)

Decided January 29, 1979.                    Rehearing denied March 19, 1979.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Mary J. Mullarkey, First Assistant, Sharon S. Metcalf, Assistant, for petitioner.

Thomas E. Jagger, City Attorney, Thomas G. Brown, for respondent.

*En Banc.*

MR. CHIEF JUSTICE HODGES delivered the opinion of the Court. .

The City of Pueblo brought this action against the Director of Revenue to obtain a refund of $85,025 in state sales and use taxes. The taxes were paid by the contractor during construction of an air pollution control project at the Colorado Fuel and Iron Corporation (C.F. & I.) plant at Pueblo. The Executive Director of the Department of Revenue denied a refund of sales and use taxes to the City of Pueblo. The district court reversed after a *de novo* trial pursuant to section 39-21-105, C.R.S. 1973. The court of appeals affirmed in *Pueblo v. Weed,* 39 Colo. App. 415, 570 P.2d 15 (1977). We granted certiorari on the petition of the appellant Director of Revenue, and now reverse, thus upholding the denial of the refund.

The project was financed by bonds issued by the City of Pueblo under the "County and Municipality Development Revenue Bond Act," section 29-3-101, *et seq.,* C.R.S. 1973. Pueblo, as the sponsoring municipality, entered into a lease and lease-back agreement with C.F. & I. Under this agreement, C.F. & I. leased its coke ovens to Pueblo, which installed the pollution control devices, and then Pueblo leased the coke ovens, complete with the pollution control devices, back to C. F. & I.

The state imposed a sales and use tax on the materials purchased by the contractor for the construction of the pollution control equipment installed in the coke ovens. These taxes were paid by the contractor, who was reimbursed by the City of Pueblo. The City requested a refund from the Director of Revenue on the grounds that the purchase of the materials for the construction of the project was exempt from state sales and use taxes by virtue of section 39-26-114(1)(a), C.R.S. 1973,[1] which exempts

---

[1] Section 39-26-114 states:
*Exemptions - disputes - credits or refunds.*
(1) There shall be exempt from taxation under the provisions of this part 1 the following:
(a) All sales to the United States government, to the state of Colorado, its departments and institutions, and the political subdivisions thereof in their governmental capacities only.

purchases made by political subdivisions of the state in their governmental capacities.

██ The issue in this case is whether a private contractor's purchase of materials for a project financed under the County and Municipality Development Revenue Bond Act is entitled to an exemption from the Colorado sales and use tax as provided by section 39-26-114(1)(a), C.R.S. 1973.

The Director of Revenue urges that the proper standard for resolving this particular issue should be a two-prong test. First, he asserts it must be determined that the tax fall on the municipality claiming the exemption. In *Temple v. Venneri Co.*, 172 Colo. 105, 470 P.2d 576 (1970), a contractor attempted to claim the sales and use tax exemption afforded the United States for materials purchased by the contractor for the federal courthouse. This court there held that the question turned on the relationship between the contractor and the federal government, and if the contractor was an agent for the government, the exemption was available, but if the contractor was an independent contractor, the state was entitled to collect the tax. In making the determination that the contractor was independent and not an agent of the federal government, this court in *Temple* looked to the contract between the parties. Two years after *Temple,* this court announced *Mesa Verde Company v. Board of County Commissioners,* 178 Colo. 49, 495 P.2d 229 (1972). *Mesa Verde* arose out of a suit for a refund of ad valorem taxes which national park concessionaires had paid to the county on improvements within the national park. Since *Mesa Verde* was concerned with ad valorem taxes, which are imposed on the owner of property, we do not regard it as applicable to the case before us which involves taxes imposed on the purchaser of materials.

██ In ruling that the plaintiff was entitled to a refund, the court of appeals in the present case distinguished *Temple* on the ground that it did not deal with the right of the United States to claim a refund if it had reimbursed the contractor for sales and use taxes paid. The court of appeals noted that under section 39-26-114(2)(c), C.R.S. 1973, an exempt entity is entitled to a refund where it establishes that it reimbursed any person who made purchases on its behalf. This reasoning, however, begs the question. In order to qualify as an "exempt entity" in the first instance, it must be shown that the sale was made to the municipality in question. Section 39-26-114(1)(a), C.R.S. 1973. There is no question that in this case the contractor purchased all the materials. The mere fact that the municipality reimburses a private contractor for taxes does not establish that the sale was made to the municipality.

██ The crux of the issue here before us, as *Temple* framed it, is whether the contractor was acting as an agent or independent contractor. The court of appeals failed to consider the case in this context. It is a fun-

damental maxim of agency law that an essential characteristic of an agency/principal relationship is the agent's power to bind the principal to a third party.[2] *Restatement Second, Agency* Section 12. Under the County and Municipality Development Revenue Bond Act (see section 29-3-105(2), C.R.S. 1973), the city is prohibited from accepting any responsibility for the cost of the construction and therefore can in no way be bound by C.F. & I.'s contracts with its suppliers. In addition, the Pueblo City Council makes it clear in its approval of the Pueblo/C.F. & I. contract that the City is not to be liable for any loss, damage, liability, penalties and cost that the City may incur as title owner in connection with the project, including but not limited to, the construction of the facility and the acquisition of the leased equipment. Neither the County and Municipality Development Revenue Bond Act nor the C.F. & I. agreement with the City will permit C.F. & I. to bind the City by its contracts with its suppliers. C.F. & I. is not the City's agent and thus not privy to its immunity from taxation.[3]

The second prong of the test suggested by the Director is whether the purchases were made to the City in its "governmental capacity only." Since we have decided that the determinative question is whether an agency relationship exists between the contractor and the government, we need not reach any other contention by the Director of Revenue.

The City of Pueblo's claim for a refund of the state imposed sales and use tax was properly denied in the first instance by the petitioner. We therefore reverse the judgment of the court of appeals.

---

[2] In a factual setting analogous to this case, the United States Supreme Court examined this question of whether the contractor was independent or, as an agent of the government, immune from taxation in *Alabama v. King and Boozer*, 314 U.S. 1 (1941). In *Alabama*, the government undertook to pay the contractors a fixed fee and to reimburse their expenditures for all supplies, materials and state and local taxes. The contractors, however, were to purchase all materials in their own name and on their own credit and the government was not bound to third party suppliers by their purchase contracts. The Supreme Court held that since the federal government had not agreed to allow the contractor to pledge its credit or to allow itself to be bound by the supply contracts, the contractor was not the government's agent and, therefore, the government was not the purchaser. Hence, the imposed tax was not an infringement of government immunity from taxation. *See also United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964); *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958).

[3] In *United States v. New Mexico*, 581 F.2d 803 (10th Cir. 1978), two contractors had cost-plus contracts with the United States for performance of research and development services on government owned land. Under the contracts, the contractors were reimbursed by the government for the state taxes paid and, therefore, the cost to the government was increased by the amount of state taxes imposed on the contractors. The court held that the issue of whether the government was being taxed would not be determined by the fact that the ultimate economic burden rested on the government but by who shouldered the legal burden of the challenged taxes. The court then found that since the taxes had not been directly imposed upon the government but rather upon the contractors, who had been specifically required by their agreement with the government to act as independent contractors and not as agents of the government, New Mexico's state tax on the contractor's purchases of material was not a tax imposed on the government.