COTTONWOOD FARMS, a Colorado general partnership, and Colorado Rock Company, a Colorado corporation, Plaintiffs-Appellants,

v.

The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF JEFFERSON, Colorado, and the State of Colorado, Defendants-Appellees.

No. 84CA1003.

Colorado Court of Appeals, Div. II.

May 1, 1986.

Rehearing Denied May 29, 1986.

Certiorari Granted (Cottonwood) Sept. 29, 1986.

Hutchinson, Black, Hill, Buchanan & Cook, David G. Hill, David M. Packard, Boulder, for plaintiffs-appellants.

Patrick R. Mahan, Co. Atty., H. Lawrence Hoyt, Asst. Co. Atty., Golden, for defendant-appellee Board of County Comrs.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael D. Murphy, Asst. Atty. Gen., Denver, for defendant-appellee State.

VAN CISE, Judge.

Plaintiffs, Cottonwood Farms as owner and Colorado Rock Company as lessee, brought this action against defendants, Jefferson County Board of County Commissioners (the board) and the State of Colorado (the state), seeking, in seven separate claims, to overturn the decision of the board denying plaintiffs' application to rezone their land so they could operate an aggregate quarry thereon. All seven claims were dismissed by the trial court, and the decision of the board denying the rezoning was affirmed. Plaintiffs appeal the dismissal of six of the claims. We affirm.

In December 1981 and February 1982, plaintiff Cottonwood Farms purchased 323 acres of land in unincorporated Jefferson County, with the intention of developing it into an aggregate quarry. Pursuant to the 1973 Preservation of Commercial Mineral Deposits Act, § 34–1–301, et seq., C.R.S. (the Preservation Act), the Colorado Geological Survey had designated this land as containing commercial mineral deposits. Thereafter, as required by § 34–1–304, C.R.S., the county in 1977 adopted a mineral extraction policy plan, including a map showing the mineral deposits on this site to be of "good quality," the highest grade allocated to any deposit.

At the time of purchase, and at all times since 1955, the property has been zoned Agricultural-One (A–1), which zoning does not permit any mining activity as a use by right or by permit. Therefore, in February 1982, plaintiffs applied for the property to be rezoned from A–1 to Planned Development-Mining (PD–Mining). The application included detailed proposals for the operation of an aggregate quarry thereon. They had previously obtained a permit from the Water Quality Control Division of the State Department of Health to discharge effluent, and, in October 1982, obtained a permit for all quarry activities from the Air Pollution Control Division of the department.

In November 1982, the county planning commission recommended conditional approval of plaintiffs' rezoning application. However, following a series of public hearings, the board in October 1983 denied the application.

In November 1983, plaintiffs instituted this action against the board on six claims for injunctive and declaratory relief and for damages. These claims were based on the board's alleged: (1) denial of equal protection in the zoning of county owned and operated as contrasted with commercial quarry operations (equal protection), (2) deprivation to plaintiffs of all reasonable use of the property (inverse condemnation), (3) denial of due process because of lack of adequate standards for rezoning, (4) im-

proper exclusion of mining as a use by right (exclusionary zoning), (5) denial of the rezoning on impermissible grounds, and (6) violation of 42 U.S.C. § 1983. Also, as a seventh claim, plaintiffs sought certiorari review of the board's actions pursuant to C.R.C.P. 106(a)(4). The state was joined as a defendant on the inverse condemnation claim, for allegedly depriving plaintiffs of all reasonable use of their property and taking plaintiffs' property without just compensation through its 1973 enactment of the Preservation Act.

On motion, the trial court dismissed all claims against both defendants except its claim under C.R.C.P. 106. That claim was subsequently dismissed and the decision of the board denying the rezoning was affirmed. Plaintiffs appeal the dismissal of claims 1 through 6.

## I.

Plaintiffs first contend that the trial court erred in holding that they do not have standing to assert their first claim, denial of equal protection in the zoning of county owned as contrasted to commercial quarry operations. We agree with the trial court.

 The proper inquiry on standing is whether the plaintiffs have suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. *Board of County Commissioners v. City of Thornton*, 629 P.2d 605 (Colo.1981); *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977). Plaintiffs' claimed injury is that they were discriminated against in the application of zoning laws.

Under the county zoning regulations, the county is not required to rezone property owned or leased by it for purposes of open mining of aggregate. *See Clark v. Town of Estes Park*, 686 P.2d 777 at 779 (Colo. 1984). Instead, the board approves or disapproves a plan prepared and recommended by the Public Works Department. This procedure is not available to private persons.

However, the county's mining is limited to extracting sand and gravel exclusively for construction, repair, and maintenance of county roads and facilities. The plaintiffs' property is not located near the county quarries, and they did not allege or show any injury to their property or its use by reason of the county's operations.

Plaintiffs rely on *CF & I Steel Corp. v. Colorado Air Pollution Control Commission*, 199 Colo. 270, 610 P.2d 85 (1980) in support of their standing claim. However, that case is inapposite. In *CF & I*, the parties bringing the action showed that they were "adversely affected or aggrieved by agency actions" (the enactment of air pollution control regulations) and were, therefore, entitled to seek judicial review under the Administrative Procedure Act (the A.P.A.) and to bring an action for declaratory relief under C.R.C.P. 57.

 Here, the board is not an "agency" as defined in § 24–4–102(3), C.R.S. (1982 Repl.Vol. 10), so the A.P.A. has no application to this case. Also, plaintiffs made no showing that they have been adversely affected or aggrieved by reason of the county's regulations concerning its own quarries. Consequently, they have no "special interest in the subject matter which is different from a general interest theoretically shared by tens of thousands of other residents" in Jefferson County; therefore, they have no standing to bring the first claim. *Kolwicz v. City of Boulder*, 36 Colo.App. 142, 538 P.2d 482 (1975). *See also Board of County Commissioners v. City of Thornton, supra*.

 Furthermore, even if plaintiffs did have standing to claim a denial of equal protection, such claim is without merit. A county's facilities and operations are exempt by statute from zoning regulations. *See* § 30–28–110(1), C.R.S. And ordinances or regulations which exempt public operated facilities from zoning requirements while maintaining regulation of private operations have been upheld repeatedly against constitutional attack. *See* 2 R. Anderson, *American Law of Zoning* § 12.04 (2d ed. 1976), and cases set forth therein.

*See also Clark v. Town of Estes Park, supra.*

## II.

Plaintiffs next contend that the trial court erred in dismissing their second claim, inverse condemnation. They assert that, by the enactment of the Preservation Act in 1973 and the determination by the Colorado Geological Survey that the site contains commercial mineral deposits, the state has prohibited any use of the site that would "interfere with the ... future extraction of such deposit by an extractor," § 34-1-305, C.R.S., and by placing that limitation on uses of the site, has "taken" without just compensation the possibility of other uses of the property. Also, they argue that, in view of the Preservation Act limitations on use, by denying their application to change the zoning from A-1 to PD-Mining, the board has deprived them of substantially all the use of their property and, thus, has taken it without just compensation. We disagree.

■ Section 34-1-305(5), C.R.S., provides that: "Nothing in this section shall be construed to prohibit a use of zoned land permissible under the zoning governing such land on July 1, 1973," the effective date of the Preservation Act. On that date, the property was zoned A-1, and it was still zoned A-1 when plaintiffs acquired it. Enactment of the Preservation Act did not deprive plaintiffs of anything, and plaintiffs are still entitled, without limitation, to all uses permitted under that zoning including all agricultural and moderate density (one unit per five acres) residential uses. To deprive a landowner of any reasonable use of his property, the property must have been acquired under one zoning regulation and then be unconstitutionally "taken" by a change of zoning. *Bear Valley Drive-In Theater Corp. v. Board of County Commissioners,* 173 Colo. 57, 476 P.2d 48 (1970). This did not occur here.

## III.

■ Plaintiffs further contends that the trial court erred in ruling that there is no merit to their fourth claim, exclusionary zoning. Relying on *Combined Communications Corp. v. City & County of Denver,* 189 Colo. 462, 542 P.2d 79 (1975), they argue that the due process clauses of the U.S. and Colorado constitutions were violated by the board's enacting zoning regulations which do not provide for mining as a use by right. We do not agree.

In *Combined Communications,* the supreme court held that two city ordinances which effectively eliminated the billboard business in Denver constituted an unreasonable exercise of the police power and were, therefore, unconstitutional. However, in the instant case, aggregate mining is not prohibited. In fact, long before plaintiffs filed their application, the board had adopted a mineral extraction plan in compliance with the Preservation Act. There are two zoning districts which allow mining, one as a use by right (PD-Mining) and another as a conditional use (Mineral-Conservation), so long as the standards and criteria for rezoning are met.

Plaintiffs were turned down, but not because aggregate mining was a prohibited use. Their application was denied because, as found by the board, the proposed mining operation would adversely impact air quality, noise in the area, water quantity, safety from blasting, the economics of the neighborhood, and visual scenery. In a proper case, rezoning can be obtained to permit mining within the county. The exclusionary zoning claim was properly dismissed.

Furthermore, plaintiffs' problem is one of self-inflicted hardship, which neither the board nor the court is under any duty to remedy. *Nopro Co. v. Town of Cherry Hills Village,* 180 Colo. 217, 504 P.2d 344 (1972); *Levy v. Board of Adjustment,* 149 Colo. 493, 369 P.2d 991 (1962).

## IV.

In support of their third and fifth claims, plaintiffs allege that the board's decision to deny rezoning violated their due process rights because the regulations guiding the Board in its decision-making are not specific enough, making them constitutionally in-

adequate. We disagree and hold dismissal of these claims was proper.

Jefferson County's zoning regulations provide explicit standards and criteria. *See Western Paving Construction Co. v. Board of County Commissioners*, 689 P.2d 703 (Colo.App.1984). Also, the board's decision to deny plaintiffs' application specifically addressed these criteria.

### V.

Since we have concluded that plaintiffs were not deprived of any constitutional rights in the board's actions denying plaintiffs' rezoning application, claim six for damages under 42 U.S.C. § 1983 was properly dismissed. Therefore, we do not address the question whether a § 1983 damages remedy under other circumstances would be available against the board or the county arising out of rezoning action by the board.

### VI.

Plaintiffs' other contentions are without merit.

Judgment affirmed.

SMITH and STERNBERG, JJ., concur.